Good morning, and may it please the court. Emily Grondyke on behalf of Petitioner Chanh Dang. The district court in this case applied the wrong legal standard, a legal standard substantially more burdensome than the one that should have applied. In this case, oh excuse me your honor, unless the court has specific questions regarding the investigation claim, I plan to focus in this argument on Mr. Dang's ineffective assistance of counsel claim regarding the failure to preserve his Batson objection. Regarding that claim, the district court applied the wrong standard. The district court applied the substantially more difficult standard of section 2254 D, when in this case, de novo review should properly have applied. That's because in this case, Mr. Dang's ineffective assistance of counsel claim regarding his Batson objection. It is undisputed that that claim was denied on procedural grounds alone by the highest state court to decide this claim. In that situation, this court has held that the standards of the AEDPA, specifically section 2254 D, do not apply. This court held that in Amato v. Gonzalez. Specifically, the court was quite clear in that case. It held AEDPA deference does not apply where a lower state court addresses the merits, but a state appellate court fails to do so. Isn't Amato distinguished because that was a case that dealt with a new trial, a motion for a new trial on procedural grounds, on direct appeal, not on habeas review? So can you tell me if that's not distinguishing? No, your honor. I don't think that changes the application of a general rule. In that case, a lower state court denied Mr. Amato's Brady claim on the substantive ground of materiality, and then a higher court denied on strictly procedural grounds. And that's exactly what happened in this case. A lower state court denied on merits grounds, and a higher state court denied strictly on a state procedural ground. So the fact that that was direct review in this case, that situation arose during post-conviction, doesn't change the analysis at all. The Court's analysis in that case applies fully to this case. The Ninth Circuit in that case stated that the higher court denied on different grounds, that the higher court did not consider the Federal constitutional requirements of the merits of the claim. This Court said that the higher state court's rulings were based totally on state law, and that the higher state court did not comment on the lower court's rulings. All of those observations are equally applicable in this case, where a lower court denied the claim on the merits, but a higher court ruled strictly on the grounds of In re Clark. I'm just a little concerned here. If a motto applies, like you're asserting, doesn't it follow that any California habeas petitioner could avoid AEDPA by filing an untimely petition reasserting, you know, the claim that has already been denied on the merits? I don't know if that would be possible, Your Honor, but I don't think there's any evidence that that would be possible. Well, the Court could, for example, make rules regarding if it's apparent that petitioners are acting to stand back the courts, but there's no evidence that anything like that has happened in this case. Well, I know not in this case, but if we say that could happen in this case, I mean, are we setting a precedent that people can just avoid AEDPA? Well, you know, that's the general rule is exactly what was applied in Amado, which is we look to the highest state court decision on a claim, assess what that state court did, only if it's not clear what the state court did do we ever look through to a lower court's decision. And so what I'm advocating here and what Amado did is simply an application of the general rule, which is we look to the highest state court that offered a reasoned decision on the issue. So to the extent that Amado creates that complication, the entire look-through  And so the question is how is it that the same kind of doctrine creates the same problem. But again, Your Honor, there's simply no evidence in this case with a pro se petitioner whose English-language skills are extremely limited. There's no evidence that he was acting in any way to subvert the requirements of habeas corpus procedure or the AEDPA. In this case, applying the rule of Amato, then, the district court should have reviewed this claim de novo. Instead, it applied the substantially more rigorous requirements of Section 2254d. But reviewing the claim de novo, the question should have been, was Mr. Dang entitled to an evidentiary hearing? Reviewing de novo, a petitioner's entitled to a hearing if he's had no hearing in State court, if he did not fail to develop the record in State court, and if he alleges a colorable claim. Now, in this case, the district court overlooked the requirement that Mr. Dang allege a colorable claim and instead held him accountable for his failure to provide adequate evidence of his claim. Kagan, let's talk about that. What allegations does your client make that make out a colorable claim that his trial counsel would have succeeded on the Batson motion? Your Honor, what he alleged is, first, that the prosecutor struck all of the Asian members, potential jurors, from the jury. He further alleged that there were three Asians in the jury pool and that all three of them had been struck by the prosecutor. He alleged that his trial counsel failed to object. So that's enough. Well, Your Honor, that's sufficient. A prime official case, does that raise to a colorable claim? I mean, it's a prime official case at step one. Is that a colorable claim? Well, given the state of the record at this point, that's as much as it would have been possible for Mr. Dang to allege. Because his trial counsel failed to preserve this issue, there's no further record of what the prosecutor's explanation of those strikes would have been or whether the prosecutor would have made any explanation of those strikes. So at this point, the question for steps two and three of Batson is one that requires further record development even to be able to assess. And what's the authority? I mean, do you have any cases that track this? Well, Your Honor, this Court's decision in Carrere v. Ayers assessed an ineffective assistance of counsel claim relating to the failure to raise a Batson objection. And that case, as Your Honor suggests, does say that ultimately the prejudice question is going to be whether the Petitioner has a reasonable probability of succeeding on a Batson claim. But in this case, Mr. Dang's entitled to evidentiary development before he's required to make that ultimate prejudice showing. At this stage, given the state of the record, it's simply not possible for him to prove his case, but he's required only to allege it, not to prove it. But he was supposed to have an obligation to develop the factual basis for his claim in State court. And how can we say that he did that if he never requested a transcript of the voir dire portion of the trial? Your Honor, there are a few issues there. First, it's important to bear in mind that Mr. Dang was, at most relevant points in time, pro se, and he does have a very limited ability to speak English. So the things that he did, first, when the trial court made its order not to transcribe the jury selection, there was no one in the room representing Mr. Dang. His trial counsel had been allowed to withdraw, and Mr. Dang had not yet been granted the right to represent himself in pro per. So he was literally unrepresented. But looking at the record, I mean, he was vehemently wanting to represent himself, I mean, putting context around this. And outlining, if I recall correctly, all the different things that he could do, why shouldn't we say that, you know, he could have done this at that point? Well, some additional things that he did that I think were expressing his goal of preserving the record. He did mention to the superior court that there was a Batson-Wheeler issue. He attempted to file a motion on those grounds, but the superior court rejected that motion on procedural bases. So that alerted the court and should have alerted his appellate counsel that there was a potential issue that should have triggered the transcription. Well, it cuts both ways, though. I mean, it's also he should have asked for the Wadeer transcript. Yes, Your Honor. In a perfect world, he would have. Also in a perfect world, his appellate attorney would have done that. And he did not. And Mr. Dang has alleged that his appellate attorney was ineffective for failing to preserve all the grounds that Mr. Dang has presented in his Federal petition. It should also be noted that he stated to the superior court in his first State post-conviction that he lacked a complete record. He did he states that he filed a motion for transcripts. And I know the warden questions whether that was filed, but he swears that he did file that motion. And while it addresses a different day of trial, I acknowledge, I think it makes clear that this pro se petitioner was making a real effort to get a complete transcript of what happened at his trial. I couldn't find any case, any other cases that, you know, reflect that supporting what you're asking us to do here with someone who developed such a minimal record here. Do you have any cases that say, you know, someone did sort of what Mr. Dang did should get the benefit of going forward at this stage? No, Your Honor. I wasn't able to find any cases that are factually or procedurally similar to this one. But I can say that the general rule is that when a petitioner has an ineffective attorney, we don't then punish that petitioner or criminal defendant for the ineffectiveness of his counsel. So in this case, you know, the lack of record is the result of trial counsel's failure to preserve Mr. Dang's constitutional rights. And so to punish Mr. Dang, then, for the lack of record, especially when he's further alleged that his appellate attorney was also ineffective for preserving the record, is, you know, unfair to Mr. Dang in that sense, that we're punishing him for the ineffective assistance of his counsel, which is the very issue he's trying to litigate now. So I think it's true that there are a number of technical problems regarding the transcript, but I think in general, we can look at Mr. Dang as an individual who was representing himself, who had, again, limited ability to speak the English language, and the record demonstrates that he was making efforts to preserve this issue for the record. And he's argued that the lack of record is the result of the ineffective assistance of both his trial counsel and his appellate counsel. It's also noteworthy in this case, Your Honor, that the district court also got the law on Batson substantively wrong. So this court, the district court reasoned, for example, that Mr. Dang's allegations that all of the potential jurors who were Asian had been struck was inadequate because the district court said some jurors of the fact that some jurors of color were seated weighs against an inference of discrimination. But I think it's a misapplication of this Court's law to say the fact that there were any members of the jury of any nonwhite race counsels against the prosecutor's discrimination against a particular racial group. That's not what this Court's law stands for, and that's not as it should be. It seems, according to the law, that your client must allege that his trial counsel's Batson objection would have succeeded. And I just am trying to find where Mr. Dang makes factual allegations that have proven suggest that his trial counsel would have succeeded here. Well, I think the law is that he needs to ultimately he'll need to prove a reasonable probability that that objection would have succeeded. That's the standard under Strickland, and that's what this Court applied in Carrera v. Ayers. Now, again, his allegations at this point that all of the potential jurors of Asian descent were struck by the prosecutor, I agree with Your Honor. That does not get all the way to Step 3 of Batson. It simply can't. But that's just a fact of the record as it stands. And given that Mr. Dang's claim should have been reviewed de novo, the holes in the record mean that he should have had the opportunity to do further record development. If there are no further questions, I'll reserve the balance of my time for rebuttal. Thank you, Your Honor. Good morning. May it please the Court. Deputy Attorney General Sciamatta-Costello appearing on behalf of Respondent. Petitioner has essentially conceded that he is neither entitled nor authorized to be entitled to relief, nor a hearing based on the record in this case. He has not made sufficient allegations, even under de novo review, to warrant a hearing. He has only alleged that the prosecutor struck all three prospective Asian jurors from the panel, and that counsel did not object to that. That is wholly insufficient, not only to demonstrate deficient performance, but especially to demonstrate prejudice, even if all of his allegations are proven to be true. This Court's cases make it clear that the petitioner must at least allege specific facts. How can he allege the specific facts as to what the prosecutor would have said? He would at least have to allege enough facts to show us, let's say, for example, even if we don't know what the prosecutor would have said in response, he would at least have to allege facts that show us what other prospective jurors were, were excused by the prosecutor. If the prosecutor would have said, I struck them because I don't like Asians, how does he know that that's what the prosecutor would have said? Even if he doesn't know what the prosecutor would have said, he has to allege more than simply. Well, what more? Suppose he alleged enough so that the prosecutor – you're saying he conceded this. I'm asking you, how does he concede it when he just says that there was a prima facie case and then his counsel failed to make the objection that would have told you what the prosecutor's explanation was? That is definitely a problem with the petitioner's claim, but that is a deficiency in his claim as he has chosen to raise it. Well, he would have had to make up things he didn't know then in order to make a claim that would satisfy you. He could at least allege and argue by inference that the reasons would appear to be pretextual, but he has not done that at all, and he has made no allegations from which any comparative analysis could be drawn, from which any potential reasons could even be inferred from the record, and it's not enough to say that he was representing himself and that he didn't have the voir dire. He represented himself during the new trial motion, never requested a transcript of voir dire. He represented himself. Okay. That's a different question. The question of what the consequence is of his failure to request a transcript of the voir dire, that's a separate issue. That's not conceding the the that he doesn't have a case because he fails to allege what the prosecutor would have said. That's step two, what the prosecutor would have said. We never got to step two. Yes, and that would be true in any case, presumably where the defendant or Petitioner makes an allegation of ineffective assistance of counsel for failing to make a Batson motion. In that scenario, because counsel has not objected, the prosecutor has not had the opportunity or been called upon to give reasons, but that is by nature the claim that he has asserted, ineffective assistance of counsel for failing to make the Batson motion. And so he at least has to make some allegations more than counsel failed to object to three prospective Asian jurors to warrant a hearing in this case. That is what this Court's cases require. He is not entitled to a hearing simply to search out the reasons for his case. He needs to at least make specific allegations. He was present at the trial, and he's not made almost no showing whatsoever of deficient performance overcoming the competence, the presumption of competence that applies to counsel, nor has he made any allegations whatsoever that could possibly be construed as reflecting prejudicial error by counsel. And that is, those are the requirements that he has to meet. Otherwise, a Petitioner will always be able to come in and say, well, I didn't develop my record, and I simply couldn't do it, therefore I get a hearing. That's simply not enough under this Court's authority. Let's talk about a motto. Yes. What's your response? Our response is that a motto does not apply in this case. A motto was a direct appeal case, and in an appellate context, it is clear that the court of appeal is reviewing on the merits the trial court's judgment. It is in a position to overrule the trial court or supersede its reasoning or supersede the ultimate outcome. It's very different in the habeas context. Each California habeas court has original jurisdiction. Just because a Petitioner later delays in presenting a petition to the California Supreme Court or makes an inadequate showing in that court for his delay so that the court then finds him to be untimely, that in no way changes, alters, supersedes or negates the merits ruling of the superior court. And this Court did not say that in the habeas context that would be true in a motto, and there is no other authority from this Court that shows that that would be the proper approach to take. And, in fact, in the reply, Petitioner conceded that there was no published authority for that approach. And we assume you also concede there's no published authority supporting your view. No, I do believe that Medley, by analogy, provides support for our view. Oh, you're arguing by analogy. What case? Medley, it's cited in our answering brief. The Medley case, the trial court had issued a pretrial ruling on an instructional issue. The California courts on habeas review did deny the claim on procedural grounds, and yet the en banc court went back to the previous trial court ruling on the merits and gave deference to that, although it doesn't appear that the whether or not deference applied to that was a disputed issue in this case. Just looking to the courts, and the court was actually called upon in that case to decide because the Respondent had argued, made an argument that put the court in a situation of having to decide what court has issued a merits ruling and do we have a merits ruling, the en banc panel looked all the way back to the trial court's pretrial ruling and did apply deference to that ruling under D, even though the claim had been rejected on procedural grounds and had not been adjudicated on the merits in the habeas petitions. And so that case does support our argument that D continues to apply. All right. Now, the ineffective assistance of counsel is ordinarily not determined on a direct appeal. It's normally determined in a habeas or a collateral proceeding. Is that right? Ordinarily. Ordinarily. So ordinarily you go to habeas and that's where you present your merits argument. And how is that different from an ordinary appeal where you ordinarily present the merits directly to the trial court, then it goes to the court of appeals and sometimes to the Supreme Court? In those cases, we take the final ruling of the California Supreme Court if it's procedural and we say, no, we go to the merits ourselves. That's what we look to, the Supreme Court's ruling. In a habeas case, where you first present the merits of your claim to the trial court or whatever court you happen to have here your original habeas petition, and then it goes to the Supreme Court, which decides it on procedural grounds, how is that different where you first have your presentation to a habeas court? Then you go to the Supreme Court and it decides it on procedural grounds. How is that different from the ordinary trial where you can present your merits argument on your direct appeal? It is different because the higher courts are not actually reviewing the propriety of the rulings of the lower courts. They're simply looking to the petition filed before them in that case and assessing whether procedural grounds apply and whether the petitioner in that case has alleged a prima facie case so that an evidence you're hearing may be warranted. And as we know in California procedure, the defendant or the petitioner is not even required to allege from one petition to the next the same claims. He also has to make his own showing in each petition, substantiating or excusing his delay. And so it's not a review process like an appeal. Kennedy, I'm talking about ineffective assistance of counsel, which is a claim that you ordinarily have to make on habeas or on collateral proceeding. Correct. So when that collateral proceeding is reviewed in the State court, it can only be done by the court of appeals or the Supreme Court. And the Supreme Court is the final authority, and it rejects it on procedural basis. How is that any different for that important claim than any other ordinary merits claim? I understand it's not you don't go straight through to the Supreme Court, which then rules. You have to go back and do it in habeas, and then proceed up the line if you unless you fail to exhaust. So I don't see how the problem is any different, that you've taken an important aspect of your case, which you're required to do on merits, and the Supreme Court doesn't reach it for a procedural reason. It is true that in terms of going up the ladder, the Petitioner in this case substantially, not completely, but somewhat followed that. But that is a very – that only takes us so far. What matters under the statute is he's – the provisions of 2254d apply as long as there's a merits ruling by the superior court. Here we have a merits ruling by the superior court that the California Supreme Court did not change. That's what makes this different than an appeal. Well, what bothers me, and I'd like to – because I want to consider only the ineffective assistance of counsel claim. I mean, other types of habeas claims may be different. But I'm interested in how – what we should do where – with any other kind of merits claim, the rule is clear, that if the Supreme Court rejects it on a procedural basis, we just go ahead and treat it under a motto. And you say, but where it's ineffective assistance of counsel, we shouldn't do that. We shouldn't follow that process, which applies to an ordinary merits complaint. We shouldn't apply it in an ineffective assistance of counsel case. No, Your Honor. What I'm trying to say is that any claim, ineffective assistance or any other substantive claim that's raised for the first time on habeas, as would be true for ineffective assistance, but also other claims, if we have – I'm not asking about other claims. I understand. Ineffective assistance is a very important claim that comes regularly and can't be raised until habeas. Be that as it may, as long as a claim has been denied by a State court on the merits and that merits ruling survives, it is entitled to deference under 2254D. And here we have a merits ruling by the superior court that survives. There was nothing about the petitioner's delay and failure to sufficiently justify his delay later in the California Supreme Court that changes. The California Supreme Court was not giving an opinion about the timeliness of the superior court petition, nor was it taking a position on the propriety of the superior court's ruling on the merits of the ineffective assistance of counsel claim. So it's simply a separate ruling on a separate petition based on different allegations or sometimes, as in this case, similar allegations and the showing for justifying the delay in that court. It's not a review process like we do see in appeal, and that is what makes it different. So our argument is that D does apply. Amato does not change that because Amato was only issued in the context of a direct appeal, and in that situation, basic rules of appellate review dictate that the higher court is actually reviewing the propriety of the lower court's decision. But that is not what we have here. And even so, as I argued at the beginning, there are not sufficient allegations in this case to not only not enough to demonstrate deficient performance or overcome the presumption of competence by counsel because the prosecutor may well have had obvious, race-neutral reasons for removing these three jurors, but there are absolutely no factual allegations that could possibly be relied upon to show that such a motion would reasonably likely have been granted. And so the district court, although for different reasons, correctly found that these claims should be denied without a hearing.  Thank you. Can I ask a question? Yes, you can. Yes, I'm here. Can you hear me all right? Yes. I can hear you well. I know this is not a direct brief idea, but I am interested in all the facts of the case. You received a 91-year sentence, is that right? I'm sorry, could you please repeat that? I couldn't hear the last part of the question. Did he receive a 91-year sentence? Yes, that is correct. Then essentially a life sentence? He was young at the time, but potentially because there were 16 counts, yes, he did receive a 91-year sentence approximately. And he would not have received that necessarily for murder or for rape. What were the times that he committed that justified that? It was a variety of different crimes. They were based on him assaulting his girlfriend at the time. He also waved a gun at an entire family, threatened to kill the parents and all the children on multiple occasions. So criminal threats and some other charges as well. Did he kill anybody? Not in this case. Not in this case, in some other case? No, Your Honor, I mean this case does not involve a murder charge, that's correct. It does not involve waving a gun? It's not simply waving a gun, he physically assaulted his girlfriend. That was not a rape, was it? It was not, but this case also does not present any issues about the propriety of the sentence and there are no issues certified for appeal on that. I realize that. You know, we might go on for the whole picture. This is a very disturbing sentence. It is a lengthy sentence and I would argue that it's well justified that a crime was committed in this case. Well justified? Yes. All right. Mark Judgeman? I'm sorry, I missed that last part. Judge Newman, can you still hear us? Yeah, it's fine. Okay. All right, thank you, counsel. Thank you. Very briefly, the warden's effort to distinguish a motto in this case relies entirely on the supposed difference between the direct appeal and state habeas proceedings. The warden repeatedly cited California's original jurisdiction system, but this court and the Supreme Court have repeatedly held that California's post-conviction system is functionally one of appeals. So although the courts claim original jurisdiction What's the principal case for that? The Supreme Court held as much in Yields v. Nonemaker, which established the look-through doctrine. It held that California's system functions like a standard appeals system. And so that basis for distinguishing this situation from a motto or from the general rule, which is simply that we look to the highest reasoned decision of the state court, it simply provides no basis for distinction. Thank you. Thank you. The case is now due to be submitted.
judges: REINHARDT, NOONAN, MURGUIA